## GUSTAVE BAUMANN v. GEORGE A. BALLANTINE.

Argued November 6, 1907—Decided February 24, 1908.

Section 5 of the Attachment act (*Pamph. L.* 1901, *p.* 158) enacts that a legacy or distributive share of an estate in the hands of an executor, administrator or trustee, may be attached in an action against the legatee or next of kin for his debt. *Held*, that an income from a fund held by trustees under the provisions of a will, which income is directed to be paid to a debtor absolutely, is attachable.

---

On motion to set aside a writ of attachment levied upon the rights of George A. Ballantine, the defendant, in the estate of Peter Ballantine, deceased, and all his rights in the estate of Peter H. Ballantine, deceased.

Before Justices GARRISON and REED.

For the motion, *Grey & Archer.*

*Contra, Guild & Martin.*

The opinion of the court was delivered by

REED, J.   The motion to set aside the levy is rested upon the insistence that all the property returned by the sheriff was not the legal but the equitable property of George A. Ballantine.

The pertinence of this insistence rests upon the line of cases in this state which declare that only legal interests are subjects for writs of attachment.

It is, however, insisted by the plaintiff in attachment that since the enactment of the statute of 1901 (*Pamph. L., p.* 160) the interests which George A. Ballantine holds under the respective wills of Peter Ballantine and Peter H. Ballantine have become liable to levy under a writ of attachment.

This act provides as follows: "A legacy or distributive share of an estate in the hands of an executor, administrator or trustee may be attached in an action against the legatee or next of kin for his debt." It is insisted that the property attached is a legacy in the hands of a trustee for the benefit of the defendant, George A. Ballantine.

For the solution of the question thus raised it is essential that the character of the interests attached under the present writ shall be exhibited.   As already remarked, the interests attached are those arising from the will of Peter Ballantine, as well as the interests of the defendant under the will of Peter H. Ballantine.

George A. Ballantine, the defendant, is the son of Peter H. Ballantine and the grandson of Peter Ballantine.   Peter H. Ballantine, his father, died before the death of Peter Ballantine, his grandfather.   The grandfather, Peter Ballantine, after the death of his son, Peter H. Ballantine, executed a codicil to his former will, and the rights attached are alleged to arise under this codicil.   By the terms of the codicil the

grandfather directed his executors to pay, assign and make over to three trustees, in trust, for purposes thereinafter expressed, all the part of his estate which by his will he bequeathed to his son, Peter H. Ballantine, to be held by said trustees in trust for the benefit of the widow and the descendants of the said Peter H. Ballantine. The trustees were directed to pay to each child of Peter H. Ballantine, when it attained the age of twenty-one years, $5,000. After directions for the investment of the *corpus* of the share of his son, Peter H. Ballantine, the testator directed that the profits from the fund should be annually divided among the children of Peter H. Ballantine, the share to be paid to each as he reached the age of twenty-one years. This will also provides that any child of Peter H. Ballantine who has reached the age of twenty-one years may dispose by will of a designated part of his share. The will also provides that when George A. Ballantine shall reach the age of twenty-four years the trustees shall assign and deliver to him another part of his share, and when he arrives at the age of thirty years, another portion of his share, the latter payment to be made if the trustees shall deem such payment for the advantage and benefit of George A. Ballantine. The remainder of the fund is to be held by the trustees during the life of the defendant, and the income paid to the defendant.

This, briefly stated, is the scheme of the will of the grandfather of the defendant.

The will of his deceased father, Peter H. Ballantine, provides that each child of the testator is to receive $5,000 when attaining the age of twenty-one years. The remaining estate is to be held by the testator's executors in trust, and the income is to be paid to the widow until the youngest child attains the age of twenty-one years, then one-third of the income is to be paid to the widow, if living, and the rest of the income to his four children, including George A. Ballantine, equally. One-fifth of his share of the estate is to be paid over absolutely to George A. Ballantine on his reaching the age of twenty-one years; two-fifths of his share when he reaches the age of twenty-eight years, providing the widow, if

living, and the executors approve, and the remaining one-fifth is to be held by the executors during the life of the defendant, George A. Ballantine.

It seems admitted in the case that the defendant is over forty years of age. It does not appear, but will be assumed, that the portions of the fund which the trustees were unconditionally directed to pay to George A. Ballantine were paid at the respective ages attained by the defendant, and this assumption will apply to those payments which were to be made in the discretion of the trustees or of the widow and executors, inasmuch as no point is made in the plaintiff's briefs that the attachment reaches any portion of the *corpus* of the defendant's share.

The alleged attachable interest, it is insisted, is the right of the defendant to receive the income from the *corpus* for life as it accrues. The question thus presented is whether the income from an estate held by trustees, the income to be paid by the trustees to the beneficiary, is attachable for a debt of the beneficiary.

Before the amendment to the Attachment act already set out, a pecuniary legacy, not chargeable upon real estate in the hands of an executor, was not subject to attachment. *Woodward* v. *Woodward,* 4 *Halst.* 115.

The immunity of a pecuniary legacy rested upon the fact that it was not payable by the executor or administrator without a bond of indemnity, and there was no provision under the Attachment act for indemnifying an executor or administrator. If section 5 of the revised Attachment act had contained the words "a legacy or distributive share in the hands of an executor or administrator may be attached in an action against the legatee or next of kin for his debt," it would seem clear that the purpose of the legislation was to change the old rule and put a pecuniary legacy in the class of attachable credits.

The addition of the word "trustee" to the words "executor and administrator" must have been made in pursuance of some legislative purpose. That the words "income from personal property," when conferred upon a beneficiary under a

will, is a legacy cannot be doubted. 18 *Encycl. L.* 799; *Cullen* v. *Attorney-General, L. R.,* 1 *II. L.* 190.

When the personal *corpus* is in the hands of a trustee, and the income payable by the trustee, the unpaid income is literally a legacy in the hands of a trustee.

The defendant insists, however, that while the right to attach this income may come within the literal words of the statute, nevertheless such a right is not included within the legislative intention. It is pointed out that such a right was not theretofore reachable in equity, nor reachable at law under the statutes to compel discovery. *Hardenburg* v. *Blair,* 3 *Stew. Eq.* 645.

Stirred perhaps by the concluding sentence in the opinion delivered in the last-mentioned case, the legislature in the following year (*Pamph. L.* 1880, *p.* 274) enacted a statute which subjected the income of property or money or things in action, held in trust for the debtor, to the payment of the latter's debts, although the trust was created by some person other than the debtor himself, provided the income should exceed $4,000.

Also in 1901 (*Pamph. L., p.* 372), in a supplement to an act respecting executions, it was provided that should it be disclosed, upon the examination of any judgment debtor, that said debtor was entitled to, or was in receipt of, an income, or any property or money or interest in kind, held in trust for the debtor, except such trust funds as are now exempt by law, then it should be lawful for the judge granting the order for discovery and examination, upon the return of such discovery and examination, to direct the judgment debtor to make payment at stated periods in an installment, and upon such terms and conditions as the said judge may direct, out of said income on account of the unsatisfied judgment.

Also, in the revised Chancery act (*Pamph. L.* 1902, *p.* 535, § 73) it is provided that if it shall appear that any person owes a debtor, or holds money or property in possession or action in trust for him or for his use, * * * and the income from such property does not exceed the sum of $4,000, it shall be lawful for the Chancellor to make an order for-

bidding the payment of such debt, or the transfer of such property or moneys by or to the said debtor until such further order.

It may be remarked that the effect of the third section of the act of 1901 in the case of a trust of the kind now under consideration is not clear, but assuming that upon no proceeding could the income of trust property, held in trust when the trust is created by a person other than the debtor, be reached by a creditor unless the income was in excess of $4,000, it does not follow that the literal force of the Attachment act is to be modified by this consideration. The primary rule of statutory construction is to give words their literal significance, unless it clearly appears from the text and purpose of the statute that a different meaning is to be attributed to them. We see nothing in the act or in the purpose to change its literal meaning.

We think, therefore, that the income from the personal fund held in trust is a legacy in the hands of a trustee, and therefore is attachable.

The motion to set aside the service of the writ is denied.